**UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

_____

**No. 96-10166**
**Summary Calendar**
_____


**OKLAHOMA SURETY COMPANY,**

**Plaintiff-Appellee,**

**versus**

**ROBERT MCCAULEY**

**Defendant,**

**and**

**ROADRUNNER TRUCKING, INC;**
**JIMMY LEE GIPSON; CLAREATHA OWENS**

**Defendants-Appellants.**

_____

**Appeal from the United States District Court**
**for the Northern District of Texas**
**(5:95-CV-174-C)**
_____

November 18, 1996

Before JOLLY, JONES and STEWART, Circuit Judges.

PER CURIAM:[*]

Roadrunner Trucking, Inc., Jimmy Lee Gipson, and

Clareatha Owens appeal the decision of the district court granting

---

[*] Pursuant to Local Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in Local Rule 47.5.4.

summary judgment in favor of Oklahoma Surety Company.  For the reasons that follow, we AFFIRM.

**DISCUSSION**

The relevant facts are not disputed.  On the evening of April 25, 1993, Robert McCauley borrowed a truck owned by his employer, Complete Service, Inc. (CSI), to help tow an inoperable Pontiac Firebird belonging to Tammy Marricle from Union, Texas to Marricle's home in Snyder, Texas.  The plan was to hook the Firebird to the truck with a chain.  All went well until McCauley missed the turnoff to Marricle's home.  Rather than continue traveling on U.S. Highway 84 to the next crossover, McCauley and Marricle decided to unhook the Firebird, roll it back downhill to the missed turnoff, and then reconnect the truck and the car and proceed to Marricle's home.  Approximately three or four minutes after stopping the truck on the side of the road, and after unhooking the chain from the Firebird, Marricle's Firebird was struck by a truck owned by Roadrunner Trucking, Inc.  The Roadrunner Truck was driven by Jimmy Lee Gipson, with Clareatha Owens as a passenger.  The CSI truck was not physically involved in the collision.

As could be expected, the accident resulted in lawsuits against Complete Services, Inc., Marricle, and McCauley in state court in Midland, Texas.  Oklahoma Surety Company (OSC), which had

2

issued a business automobile insurance policy to CSI, filed a complaint against McCauley, Roadrunner Trucking, Gipson, and Owens in the United States District Court for the Northern District of Texas seeking a declaratory judgment that McCauley was not an insured under the OSC policy; that OSC had no duty to defend McCauley; and that Roadrunner Trucking, Gipson, and Owens were not potential third-party beneficiaries under the policy.

The insurance policy issued by OSC to CSI provides in part:

> We will pay all sums an insured legally must pay as damages because of bodily injury or property damage to which this insurance applies, caused by an accident and resulting from the ownership; maintenance or use of a covered auto. . . .
> 1. WHO IS AN INSURED
>     The following are insureds:
>     a.   You for any covered auto.
>     b.   Anyone else while using with your permission a covered auto you own, hire or borrow . . . .

*Business Auto Coverage Form*, Section II - Liability Coverage.  OSC admits that McCauley is insured under the policy "while using" the truck with CSI permission.  OSC, however, asserts that McCauley was not "using" the CSI truck at the time of the accident within the meaning of the policy and that the collision did not "result from" the use of the CSI truck.

The issue before the district court was whether a truck which had stopped and was no longer attached to the vehicle it had been towing, fell within the "while using" term of the OSC insurance policy when an accident occurred between a third vehicle

3

and the towed vehicle. Both sides filed motions for summary judgment.

The district court granted OSC's motion for summary judgment. The district court found a complete lack of involvement by either McCauley or the CSI truck in the accident and concluded that the accident did not result from the "use" of the CSI truck. The district court therefore held that McCauley is not an insured under the OSC policy; that OSC is not obligated to defend or indemnify McCauley; and that Gipson, Owens, and Roadrunner Trucking are not potential third-party beneficiaries under the OSC policy. Gipson, Owens, and Roadrunner Trucking timely appeal.

## DISCUSSION

We review the district court's grant of summary judgment *de novo*, applying the same standard as the district court. *Duffy v. Leading Edge Products, Inc.*, 44 F.3d 308, 312 (5th Cir. 1995). Summary judgment is appropriate when there is no genuine issue of material facts and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see Stewart Title Guaranty Co. v. Old Republic National Title Insurance Co.*, 83 F.3d 735, 738 (5th Cir. 1996). The sole issue on appeal is whether as a matter of law McCauley's use of the CSI truck falls within the coverage provided by the OSC insurance policy.

Federal courts sitting in diversity apply the substantive law of the state in which they sit. *Rogers v. Corrosion Products,*

4

*Inc.*, 42 F.3d 292, 295 (5th Cir.), *cert. denied*, __ U.S. __, 115 S. Ct. 2614 (1995). Under Texas law, a contract of insurance is subject to the same rules of construction applicable to other contracts. *State Farm Life Insurance Co. v. Beaston*, 907 S.W.2d 430, 433 (Tex. 1995). The court's primary concern in construing an insurance policy is to determine the intention of the parties and to give effect to their written expressions as contained in the policy. *National Union Fire Insurance Co. v. CBI Industries, Inc.*, 907 S.W.2d 517, 520 (Tex. 1995); *Beaston*, 907 S.W.2d at 433. Unless good reasons appear for doing otherwise, the language used in an insurance policy must be given its ordinary meaning. *Commercial Standard Insurance Co. v. Hartzog*, 619 S.W.2d 417, 419 (Tex. App. - Houston 1981, writ ref'd n.r.e.). If an insurance policy is worded such that it can be given "only one reasonable construction, it will be enforced as written." *State Farm Fire & Casualty Co. v. Reed*, 873 S.W.2d 698, 699 (Tex. 1993). If, however, the policy is susceptible to more than one reasonable interpretation, it is ambiguous and the court "must resolve the uncertainty by adopting the construction most favorable to the insured." *Id*. Whether the insurance policy is ambiguous is a question of law. *CBI Industries*, 907 S.W.2d at 520.

Appellants contend the district court erred in granting summary judgment for OSC. Relying on *Maryland Casualty Co. v. Cross*, 112 F.2d 58 (5th Cir.), *cert. denied*, 311 U.S. 701, 61 S.

5

Ct. 141 (1940) and *Red Ball Motor Freight, Inc. v. Employers Mutual Liability Insurance Co.*, 189 F.2d 374 (5th Cir. 1951), Appellants assert that unhitching Marricle's vehicle from the CSI truck was merely a temporary cessation of the tow and that the collision was a foreseeable consequence resulting from McCauley's use of the CSI truck. In essence, Appellants argue that but for McCauley's use of the CSI truck, the collision between the Roadrunner truck and Marricle's Firebird would not have occurred and therefore McCauley was "using" the truck within the meaning of the OSC policy. We disagree, and find that the decisions in *Cross* and *Red Ball* do not support Appellants' interpretation of the OSC insurance policy.

In *Cross*, the plaintiff was injured when his leg struck the fender of a parked automobile owned by Kenneth Mason. At the time of the accident, a trailer was attached to Mason's vehicle. Mason's insurance company denied coverage based on a towing exclusion contained in the insurance policy. The trial court entered judgment in favor of plaintiff based on the fact that Mason's vehicle was standing still at the time of the accident and therefore was not technically "towing" the trailer. This court reversed, finding the trial court's literal reading of the policy unworkable. The court stated:

> The fair and practical construction is that when Mason attached the trailer to his automobile and started towing it to Longview he waived his insurance for the trip, for he was using the automobile for towing a trailer. A casual stop on the way without leaving the highway or

6

> detaching the trailer would not be a cessation of the use which would restore the insurance.

*Cross*, 112 F.2d at 60.

In *Red Ball*, an employee of the plaintiff was to drive a truck containing a shipment of cargo. The employee stopped at the employer's gas tank to fill the truck with gas. To pump gas, the employee had to open a valve between two gasoline tanks. After filling the truck, the employee negligently failed to properly close the valve. Gasoline ultimately overflowed, ran down the city gutters, and exploded. Plaintiff's insurance company denied coverage under a policy that provided for damages "arising out of the ownership, maintenance, or use of the automobile," defining "use" to include the loading and unloading of the automobile. *Red Ball*, 189 F.2d at 376 n.1.

The trial court found for the insurance company. This court reversed. While not adopting the plaintiff's theory that fueling was a loading operation, the court noted that under the "complete operation theory," Texas courts broadly read loading and unloading provisions to provide coverage for "foreseeable consequences of what was done in connection with the use of the car." *Id*. at 377. The court concluded that "this act of the driver of the [truck], in not closing the valve, was an act incident to, and having a connection with, the ownership, maintenance, or use of the truck." *Id*. at 378.

Neither *Cross* nor *Red Ball* supports a reading of the OSC insurance policy that would require OSC to provide coverage in this case. The CSI truck had stopped, the tow chain had been detached, and McCauley and Marricle were either planning to roll the Firebird back down the hill or were in the process of doing so when the accident occurred. This was not merely a "casual stop on the way." *Cross*, 112 F.2d at 60. Further, unlike the situation in *Red Ball,* where filling the truck with gasoline was necessary to use the vehicle, the act of towing and the acts that occurred here were independent acts associated with, but not necessary to, the use of the CSI truck. Finally, the phrase "while using" implies the active use of an automobile. *See Nationwide Property and Casualty Insurance, Co. v. McFarland*, 887 S.W.2d 487, 493 (Tex. App. - Dallas 1994, writ denied)("use" defined as "the employment of a vehicle as a means of transportation, or some other purpose incident to transportation"). As noted, the CSI truck in this case was stopped and detached from the Firebird. In no sense was the CSI truck in "use" at the time of the accident. *Cf. Liberty Mutual Insurance Co. v. American Employers Insurance Co.*, 556 S.W.2d 242, 245 (Tex. 1977)(unloading a vehicle is a "use" of the vehicle); *Federal Insurance Co. v. Forristall*, 401 S.W.2d 285, 292 (Tex. App. - Beaumont 1966, writ ref'd n.r.e.)(use of one's own car to push another is considered "use"); *Wiebel v. American Farmers Insurance Co.*, 140 A.2d 712, 713-14 (Del. Super. Ct. 1958)(fact that

8

automobile had been used and would again be used shortly thereafter did not create a "use" when accident occurred during a period of non-use).

**CONCLUSION**

For the foregoing reasons, the judgment of the district court is **AFFIRMED.**